[Civ. No. 19784. Second Dist., Div. Three. Apr. 28, 1954.]

THE PEOPLE, Appellant, v. S. ERNEST ROLL, as District Attorney, etc., Respondent.

Edmund G. Brown, Attorney General, and Edward Sumner, Deputy Attorney General, for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles) and William E. Lamoreaux, Deputy County Counsel, for Respondent.

Morris Lavine as Amicus Curiae on behalf of Respondent.

WOOD (Parker), J.—The People of the State of California, represented by the attorney general, sought a writ of mandate to compel the district attorney of Los Angeles County to deliver to the State of California the sum of $24,990.91 which the district attorney, in his official capacity, had seized as money that had been offered for distribution in violation of provisions of the Penal Code relating to lotteries. The writ was denied, and the People appeal from the judgment.

The question is whether the district attorney was under a duty enjoined by law to deliver the money to the state for deposit in the state treasury.

Section 325 of the Penal Code provides: "All moneys and property offered for sale or distribution in violation of any of the provisions of this chapter [pertaining to lotteries] are forfeited to the state, and may be recovered by information filed, or by any action brought by the attorney-general, or by any district attorney, in the name of the state. Upon the filing of the information or complaint, the clerk of the court, or if the suit be in a justice's court, the justice, must issue an attachment against the property mentioned in the complaint or information, which attachment has the same force and effect against such property, and is issued in the same

manner as attachments issued from the district courts in civil cases."

Appellant argues to the effect that since section 325 of the Penal Code provides that moneys offered for distribution in violation of the lottery provisions of the Penal Code "are forfeited to the state," and since section 26521 of the Government Code[1] places a duty upon the district attorney to prosecute forfeiture actions, the moneys should have been delivered to the state.

Respondent argues to the effect that said section 325 does not provide for an automatic forfeiture to the state, and that until the right of the state to the possession of the moneys has been adjudicated in a proceeding provided for in said section 325, no duty devolves upon him to turn the money over to the state.

The money was seized by deputies and agents of the district attorney on February 3, 1949, at the "Club Algiers," and at that time one Reynolds, who was the manager of the club, was arrested upon charges of violating certain sections of the Penal Code regarding lotteries. The asserted violations occurred in the presence of the arresting officers. The money was seized as evidence in connection with the charges. Thereafter, the grand jury indicted Reynolds upon charges which included conspiracy to violate certain sections of the Penal Code regarding lotteries. On June 24, 1949, Reynolds was convicted of conspiracy to violate said sections as charged in the indictment.

On May 19, 1949, one Kersh, who was the owner of the club, filed a claim and delivery action against the district attorney wherein he sought recovery of $6,900 of the $24,990.91.

On December 17, 1951, the attorney general filed the petition herein for a writ of mandate compelling the district attorney to deliver the $24,990.91 to the state.

On January 31, 1952, Reynolds filed a claim and delivery action against the district attorney, alleging that he (Reynolds) was the owner and entitled to the possession of said $24,990.91.

Said three proceedings were consolidated for trial and were tried in July, 1952. The two claim and delivery actions

[1]Section 26521. "The district attorney shall defend all suits brought against the State in his county or against his county wherever brought, and prosecute all recognizances forfeited in the courts of record and all actions for the recovery of debts, fines, penalties, and forfeitures accruing to the State or his county."

were tried by a jury, and the mandate proceeding was determined by the judge after the verdicts of the jury were returned.

Kersh obtained judgment for the return of $6,900, and no appeal was taken therefrom. In the Reynolds' case, judgment was that Reynolds was not entitled to recover any of the money. Said judgment was affirmed on appeal. (*Reynolds v. Roll* (Jan. 1954), 122 Cal.App.2d 826 [266 P.2d 222].) (Reynolds' application for a stay of judgment to permit him to petition the Supreme Court of the United States for a writ of certiorari was granted by this court on April 20, 1954.) In the present proceeding, as above stated, the petition for a writ of mandate requiring the district attorney to deliver the money to the state, was denied.

 It thus appears that, at least until Reynolds was convicted on June 24, 1949, the district attorney held the money as evidence pending the trial of the criminal charges. It also appears that on May 19, 1949, prior to the time of the conviction, Kersh had sued the district attorney for the return of part of the money, and that that action was pending when the present action was filed (December 17, 1951). About one and one-half months thereafter, Reynolds sued the district attorney for all the money. When the present action was decided by the trial judge in July, 1952 (as one of the cases consolidated for trial), the claims of Kersh and Reynolds were of course still pending, since the judgments in those cases were not final. The judgment in favor of Kersh for $6,900 of said amount became final 60 days after the entry thereof, since no appeal was taken. The judgment against Reynolds was affirmed on appeal in January, 1954, and of course during the pendency of the appeal that judgment was not final. In other words, it appears that the district attorney was holding the money either as evidence in the criminal case or to await a final adjudication of a claim or claims for the return of the money. In view of the various claims made for the return of the money, the district attorney was not in a position, prior to a final adjudication of those claims, to deliver the money to anyone without assuming the risk of being required eventually to return a part or all of said amount from his personal funds. At the time of filing the present action, or at the time of trial, the district attorney was not under a duty enjoined by law to deliver the money to the state.

■ Although said section 325 of the Penal Code states that moneys offered for distribution in violation of sections relating to lotteries are forfeited to the state, that provision does not mean that such offer for distribution, *ipso facto,* operates as a forfeiture. Said section contemplates that a forfeiture must be judicially determined. The section provides that the moneys "are forfeited to the state, and may be recovered by information filed, or by any action brought . . . in the name of the state." In *People* v. *Grant,* 52 Cal.App. 2d 794, it was said at page 799 [127 P.2d 19] : " 'If the statute which provides for the forfeiture authorizes the proper officer to seize the thing named, or if a right to sue for the violation of the statute is given to anyone, title does not vest *ipso facto* by the prohibited act being done, but relates only to the time of seizure or to adjudging of the forfeiture in a suit begun. . . .' " In *People* v. *Grant, supra,* it was also said at page 800 : "A holding that section 325 of the Penal Code does not require the bringing of an action, or of a special proceeding of a civil nature, *for a forfeiture,* would be sheer fiat." In *People* v. *Broad,* 216 Cal. 1, which involved a forfeiture of an automobile, it was said at page 3 [12 P.2d 941] : "Even where, as here, the statute declares that a forfeiture takes place at the time of the commission of the offense, such forfeiture is not fully and completely operative and effective, and the title of the state is not perfected until there has been a judicial determination."

■ There was no adjudication of a forfeiture in any proceeding against Reynolds, but the judgment in the action which Reynolds brought for the return of the money was a determination that he was not entitled to possession of the money because his claim was based upon an illegal transaction and under such circumstances the court should not assist him. Since the result of the adjudication in the case commenced by Reynolds is in practical effect the same as if a forfeiture were declared in an action against him, it would seem that when and if that adjudication becomes final the district attorney should deliver to the state the remainder of the money after deducting the amount of the Kersh judgment.

■ As above stated, there was no legal duty on the part of the district attorney, prior to or at the time of the trial herein, to deliver the money to the state.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.