[Crim. No. 11108. Fourth Dist., Div. One. Mar. 12, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD DARRELL HAYNES, Defendant and Appellant.

COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, Michael Imhoff and Handy Horiye for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Beatrice W. Kemp, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HENDERSON, J.*—Haynes was convicted by a jury of receiving stolen property (Pen. Code, § 496, subd. 1) granted probation and appeals alleging he was denied effective assistance of counsel by his court-appointed attorney's failures to object during trial to hearsay testimony and to move prior to trial for suppression of evidence resulting from the unlawful impound of Haynes' vehicle. He also claims it was prejudicial error for the court not to instruct the jury *sua sponte* it must view Haynes' admission with caution.

We set forth the facts relevant to these issues.

In August 1975, James Lee, who worked part time from his back yard repairing cars for friends, was given by his father-in-law a 1969 Chevrolet station wagon with severe front end damage as a result of an accident. The vehicle bore California license plate number YWH 512 and had a vehicle identification number (VIN) with the last three digits of 053. Lee dismantled the car and disposed of most of the parts, including the engine, transmission, front bumper with license plate, hood, grill and fenders. Primarily all that remained was the frame with the rear bumper and license plate.

Approximately August 1976, Lee advertised the car for sale as junk. He sold it for $75 to a purchaser who said he would buy it if the pink slip came with it. Lee could not describe the purchaser other than he was black, under 25 years old and he had one or two black males with him.

*Assigned by the Chairperson of the Judicial Council.

After the sale Lee was given a letter his father-in-law had received from the Department of Motor Vehicles (DMV) stating the new owner wanted to register the vehicle and the previous owner's signature was needed to clear title. Lee thought this peculiar since it was improbable the frame he had sold could be fixed to drive. He went to the address referenced in the DMV letter as the new owner's to see if he could locate the car. He was unsuccessful and some time later he lost the letter.

In December 1976, a 1969 Chevrolet station wagon with 579 as the last three VIN digits was stolen from Guarantee Chevrolet.

On March 2, 1977, Haynes was driving a 1969 Chevrolet with no front license plate. Police Officer Michalek, who knew Haynes, stopped him and gave him a warning citation for this violation and at the same time ran a check on the rear plate number (YWH 512) and the VIN number (053). Michalek determined they matched and he asked Haynes where he had gotten the car. Haynes told him he bought it from a Mexican.

On April 7, 1977, Haynes went to DMV to register the car in his name. On the same date Michalek again stopped Haynes regarding the missing front license plate. Michalek then saw temporary registration papers displayed on the front windshield and did not issue a citation.

On February 14, 1978, Michalek saw Haynes' vehicle parked in the parking lot of an apartment complex. He looked through the windshield to view the VIN number on the dashboard. The number was the same one (053) he had seen when he stopped Haynes on March 2, 1977, but this time he noticed the VIN plate was attached with rivets other than the kind normally used by the manufacturer. He also observed several gouges and scratches on the dashboard around the plate. Michalek then had the car impounded. He based his authority to do so under Vehicle Code section 10751, which provides: "(a) No person shall knowingly buy, sell, offer for sale, receive, or have in his possession, any vehicle or component part thereof from which the manufacturer's serial or identification number has been removed, defaced, altered or destroyed, unless such vehicle or component part has attached thereto an identification number assigned or approved by the department in lieu of the manufacturer's number.

"(b) Whenever such vehicle or component part comes into the custody of a peace officer it shall be destroyed, sold, or otherwise disposed of under the conditions as provided in an order by the court having jurisdiction. Nothing in this section shall, however, preclude the return of such vehicle or parts to the lawful owner thereof following presentation of satisfactory evidence of ownership and assignment of an identification number by the department. This subdivision shall not apply with respect to such vehicle or component part used as evidence in any criminal action or proceeding."

After the car was impounded a search of it revealed the engine number had been ground off and the true VIN number was 579. After further investigation it was determined Haynes' car was the one Guarantee Chevrolet had reported as stolen.

Michalek then contacted Lee who described the circumstances surrounding the sale of his junk car. Lee was shown the vehicle Michalek had impounded and Lee stated it was not the one he had sold. Lee also told Michalek about the letter from DMV and they both went to the area where Lee had gone in search of the car. Lee could not remember the actual address in the DMV letter but he pointed to three houses as the approximate location. The middle house was Haynes'. Haynes thereafter was arrested.

At the preliminary hearing Haynes' appointed attorney moved to suppress the evidence obtained from the automobile on the grounds the automobile was unlawfully seized and Vehicle Code section 10751 was unconstitutional if it provided for seizure of Haynes' automobile without a warrant. The motion was denied and Haynes was bound over for trial in superior court.

Haynes was arraigned in superior court April 11, 1978, and trial was set, after several continuances, for September 27, 1978. On August 14, 1978, counsel made a motion to be relieved as appointed attorney which was denied. At the motion counsel gave as his reasons: "Counsel: There's just—I am unable to accommodate him in the defense of this case, and I have lost my zeal for the case, and there's just a personality conflict. I would think Defenders could probably do a better job."

Counsel did not make a pretrial motion in superior court pursuant to Penal Code section 1538.5 to suppress the evidence obtained as a result

of the impound of Haynes' vehicle, however, during the trial counsel attempted to object to the introduction of this evidence.

At trial counsel did not make a hearsay objection to Lee's testimony regarding the contents of the DMV letter which Lee had lost.

Haynes testified and said he bought the car March or April 1977, from a black man whose name was Evjen. He further testified he did not attempt to register the car until after he bought it.

## ■ The Competency of Counsel

In *People* v. *Pope* (1979) 23 Cal.3d 412, 424-425 [152 Cal.Rptr. 732, 590 P.2d 859], the court set forth two requirements an appellant must establish in meeting the burden of claiming inadequate counsel: (1) that trial counsel failed to act in a manner expected of a reasonably competent defense attorney and (2) counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense. Once appellant has met his burden, *Pope* then requires the appellate courts to analyze the record and determine whether counsel's conduct was the result of an informed tactical choice or a failure to act in a diligent and conscientious manner. Where the record sheds no light on counsel's reasons for the challenged conduct *Pope* requires counsel on appeal to file a petition for habeas corpus either directly or by joining a verified petition to the appeal, unless appellant can "point to something in the record showing counsel had no satisfactory rationale for what was done or not done" (*Pope, supra*, at p. 426, fn. 16).

The record before us is silent on counsel's reasons for the conduct complained of. Haynes' situation serves as an example of the benefits that could have been derived by use of the petition for habeas corpus[1] as outlined in *Pope*, as opposed to having raised the claim of ineffective assistance of counsel by way of direct appeal on a bare record.

We would be second guessing if we tried to evaluate trial counsel's tactics. For instance, regarding trial counsel's failure to object to Lee's hearsay testimony about the contents of the DMV letter, Haynes urges us to rule this was incurably prejudicial to him as it allowed the jury to

---

[1]The fact Haynes was granted probation does not, of course, preclude relief by way of writ of habeas corpus. (*In re Smiley* (1967) 66 Cal.2d 606 [58 Cal.Rptr. 579, 427 P.2d 179]; *In re Bushman* (1970) 1 Cal.3d 767 [83 Cal.Rptr. 375, 463 P.2d 727].)

infer he attempted to register the car before the date he bought it, in direct contradiction to his trial testimony. Yet Lee could have testified, without disclosing the contents of the letter, that the reason he went to a particular location looking for the car he had sold was in response to a communication from DMV. From this possible testimony, in conjunction with the actual testimony, corroborated by Michalek, that Lee showed Michalek the area where he had gone to look for the car, the jury could have drawn the same inference. Viewed in this light counsel's failure to object becomes a technicality. Whatever counsel's reasons for not objecting, not being informed of them we are second guessing, whereas at an evidentiary hearing on a writ, trial counsel could have fully addressed Haynes' contentions.

Similarly, we are not told trial counsel's reasons for failing to make a de novo motion to suppress the evidence obtained from the impounded car.[2] Was it because his reading of Vehicle Code section 10751 and research of the statute convinced him Haynes fell within its orbit by the use of rivets to attach the VIN plate other than the kind used by the manufacturer? Had he determined the impound of Haynes' car without a warrant was permissible under Vehicle Code section 10751, in light of *Hughes* v. *Neth* (1978) 80 Cal.App.3d 952 [146 Cal.Rptr. 37]? Trial counsel's attempt to object to the introduction of this evidence at trial does not preclude sound reasons for not advancing a pretrial motion. Again, the record being silent we would be grossly unfair to interpret the record summarily as evidencing incompetent counsel where at a hearing on habeas corpus these questions could have been fully explored and trial counsel would have had an opportunity to be heard. As the court in *In re Lower* (1979) 100 Cal.App.3d 144, 152 [161 Cal.Rptr. 24], pointed out: "Seldom in our legal system do we allow a person to be accused, tried and convicted without an opportunity to be heard. This we do on attacks on trial counsel by direct appeal. Without giving trial counsel an opportunity to be heard, we determine whether or not he is guilty of the most flagrant type of legal malpractice. It would obviously be more fair to handle the matter by writ. Let the convicted defendant make his charges, then allow the accused trial counsel to present his defense.... In rare cases the inadequacy of trial counsel is apparent on the record. However, in most cases it is simply a guessing

---

[2]In order to preserve the illegality of a search on appeal, a motion to suppress must be made in superior court, it is not sufficient to have raised the issue at the preliminary hearing stage (*People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896 [150 Cal.Rptr. 910, 587 P.2d 706]).

game and not a very fair guessing game at that. It would be considerably more effective in a case such as this to allow the defendant to make his charges against his attorney, and then let the attorney answer those charges. Fundamental principles of due process call for no less."

We conclude if Haynes desires to pursue the question of the competency of his trial counsel he must do so by a petition for a writ of habeas corpus where, as the court in *Pope, supra,* said at page 427, footnote 17, "the actual, as opposed to hypothesized, reasons for counsel's acts" may be determined, and where counsel may be heard in answer to Haynes' charges.

### ■ The Court's Failure to Instruct Sua Sponte, It Must View Haynes' Admission With Caution

Haynes contends without the cautionary instruction his credibility before the jury was destroyed, since his pretrial statement to Michalek that he had bought the car from a Mexican totally contradicted his testimony at trial where he said he bought the car from a black man named Evjen.

In *People* v. *Sims* (1976) 64 Cal.App.3d 544, 555 [134 Cal.Rptr. 566], the court stated: "A trial court is under a duty to instruct a jury *sua sponte* that evidence of a defendant's oral admissions must be viewed with caution. [Citation.] However, '[t]he omission of such instructions does not constitute reversible error in every instance. Reversal is justified only if upon a reweighing of the evidence it appears reasonably probable that a result more favorable to the defendant would have been reached in the absence of error. [Citation.]'"

By reweighing the evidence in the record we conclude it is not reasonably probable a result more favorable to Haynes would have occurred had the court given the instruction. Even if the jury disbelieved Michalek's version of Haynes' statement, there was ample evidence contrary to Haynes' testimony from which the jury could infer he knowingly received stolen property. Haynes claimed he paid Evjen $250 for the car, yet he could produce no receipt and stated to the DMV the car was a gift from his uncle. A year prior to the time Haynes said he bought the car Lee, in response to a communication from DMV, attempted to locate the junk car he had sold. The area he went to was where Haynes lived. There is no basis for Haynes to claim the error was prejudicial.

The judgment is affirmed without prejudice to Haynes to petition for habeas corpus as discussed in our opinion.

Cologne, Acting P. J., concurred.

**WIENER, J.**—I respectfully dissent.

I have no quarrel with the general proposition that lawyers too are entitled to fair play and the preferable manner of resolving allegations of incompetence of counsel is by writ of habeas corpus. (*In re Lower* (1979) 100 Cal.App.3d 144, 152 [161 Cal.Rptr. 24].) Particularly where the criticism of counsel is directed to *trial* tactics, such as the failure to object to evidence, it is virtually impossible in a direct appeal to resolve whether counsel's decision in the heat of trial was predicated on tactical considerations. (*People* v. *Frierson* (1979) 25 Cal.3d 142, 158 [158 Cal.Rptr. 281, 599 P.2d 587].) However, where the attack is directed to a pretrial motion to suppress evidence tactical considerations would appear to be irrelevant. If the motion is brought the worse that can happen is that it will be denied; the evidence, subject to other rules governing its admissibility, will then be available for trial. Under such circumstance the record itself is sufficient to determine whether trial counsel failed to meet the standards established in *People* v. *Pope* (1979) 23 Cal.3d 412, 424-425 [152 Cal.Rptr. 732, 590 P.2d 859].

A reasonably competent counsel acting in a diligent manner should surely attempt to suppress the evidence which forms the basis for the case against his client where there is some likelihood of success in an unsettled area of law and where the failure to do so prevents appellate review of that issue. (*People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896 [150 Cal.Rptr. 910, 587 P.2d 706].)

Here counsel's failure to renew his motion to suppress at the superior court resulted in the withdrawal of a potentially meritorious defense. Vehicle Code section 10751 does not expressly authorize a seizure of a vehicle with an altered or removed serial number. (Cf. *People* v. *Woolsey* (1979) 90 Cal.App.3d 994 [153 Cal.Rptr. 746]—a warrantless search under Vehicle Code section 2805 held constitutional.) *Hughes* v. *Neth* (1978) 80 Cal.App.3d 952 [146 Cal.Rptr. 37], does not hold to the contrary for the issue of "the constitutional propriety of the initial police seizure" of the vehicle (motorcycle) was neither raised nor addressed in that case (*id.* at p. 956). The impoundment of the car was not proper aside from the statute for the seizure was not necessary to

preserve potential evidence. (See *People* v. *Curley* (1970) 12 Cal. App.3d 732, 747 [90 Cal.Rptr. 783].) Exigent circumstances were not established. The same police officer had observed the vehicle for over a year; nothing new had occurred to cause him to believe there was an increased likelihood the vehicle would be destroyed or would otherwise not be available to search after he obtained a search warrant.

I would reverse the judgment.

A petition for a rehearing was denied March 28, 1980, and appellant's petition for a hearing by the Supreme Court was denied May 8, 1980. Mosk, J., was of the opinion that the petition should be granted.